IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

AGRI-SALES AND ASSOCIATES, )
INC., )
 )
      **Plaintiffs,** )
 )
v. ) Case No. CIV-14-99-SPS
 )
ROY HALL and BEA HALL, )
Husband and Wife, )
 )
      **Defendants.** )
 )

# OPINION AND ORDER

The Plaintiff Agri-Sales and Associates, Inc. ("Agri-Sales"), a Texas for profit business corporation doing business as Southwest Ranch and Farm Sales, sued the Defendants Roy Hall and Bea Hall, husband and wife, in this court on the basis of diversity jurisdiction. Agri-Sales alleged that it possessed the right to sell the Defendants' ranch in an "Exclusive Right to Sell Listing," and that the Defendants breached the contract by refusing to sell their property when Plaintiff produced a buyer. The parties have now filed opposing summary judgment motions pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the Court finds that the Plaintiff's Motion for Summary Judgment [Docket No. 22] should be GRANTED, and that Defendants Motion for Summary Judgment [Docket No. 38] should be DENIED.

**LAW APPLICABLE**

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

**FACTUAL BACKGROUND**

The undisputed facts[1] reflect that on August 14, 2013, the Defendants Roy and Bea Hall entered into a contract titled "Exclusive Right to Sell Listing" ("the Listing") with Plaintiff Agri-Sales (doing business as Southwest Ranch and Farm Sales) through its

---

[1] The Defendants' "Response in Opposition to Plaintiffs Motion for Summary Judgment and Brief in Support" contained numbered statements refuting the Plaintiff's first three statements of material fact; however, instead of addressing Plaintiffs' Statements 3-8, Defendants instead drafted their own "Timeline of Contract Negotiations." *See* Docket No. 29, pp. 2-6. The Court notes that such an approach is in contravention of Fed. R. Civ. P. 56 and this Court's own Local Rule 56.1(c), which requires that "[e]ach fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and if applicable, *shall state the numbered paragraphs of the movant's facts that are disputed*." [emphasis added].

broker Jim Long. The Listing, signed and dated by Mr. Long and the Halls, was for the period of August 15, 2013 through February 15, 2014, and described the Defendants' property as "1346 +/- Acre Roy and Bea Hall Ranch." *See* Docket No. 22, Ex. 1. The Listing further provided that no personal property would be part of the sale unless both buyer and seller agreed, and stated the agreed-upon price was $1,995.00 per acre in cash. *Id.* Additionally, the Listing contained two handwritten notations, initialed by Roy Hall and dated August 14, 2013, stating: (i) "Reserve the right to sell house and 10 acres w/o commission" and (ii) "Reserve the right to sell house and 67 acres on So. End of Ranch w/o Commission." *Id.* In exchange, the Halls agreed to pay a 5% professional service fee of the gross sales price of the property if, *inter alia*, the broker "procures a purchaser during the term of this agreement ready, willing and able to purchase at the above price and terms, or any other price or terms agreeable to Seller[.]" *Id.*

Sometime thereafter, Defendant Roy Hall signed a contract entitled "Listing Contract, Exclusive Right to Sell" with real estate agent Mary Terry on November 23, 2013, as to Mr. Hall's ranch home, which is located on the ranch and one of the properties subject to the reservation of rights contained in the "Exclusive Right to Sell Listing" between Mr. Long and the Halls. The agreed listing price was $325,000, and was for the period beginning November 23, 2013 and ending April 28, 2014, allowing for a 6% commission of the total sale price. *See* Docket No. 38, Ex. 4. Mrs. Hall did not sign this contract, although there was a place for her to do so. *Id.*

On February 1, 2014, Mr. Long produced a "Farm and Ranch Contract" to the Defendants, which contained a signed offer from Mr. Franklin Sapp to purchase the Hall

-3-

Ranch for cash at $1,860.00 per acre. *See* Docket No. 22, Ex. 3. The Halls counteroffered with a full price demand of $1,995.00 per acre in cash, as well as a $500,000 allocation for the home, forty acres, and improvements, along with a no minerals transfer clause; Mr. Sapp agreed to those terms, signing a second "Farm and Ranch Contract" on February 3, 2014, and submitting it to the Halls. *See* Docket No. 22, Ex. 5. The Halls then raised their demand to a $700,000 allocation for the main home, and Mr. Sapp once again agreed, signing a third draft of the contract agreeing to these terms on February 4, 2014. *See* Docket No. 22, Ex. 6. Each draft contained a provision that Mr. Sapp would deposit a sum of at least $50,000 in earnest money upon execution of the contract by all parties, with additional earnest money being deposited within fifteen days of the execution of the contract by all parties. Each version of the "Farm and Ranch Contract" signed by Mr. Sapp made reference to the inclusion of two Addenda to the Contract. The second Addendum, not at issue, related to the parcel numbers for the Hall ranch. Addendum A, however, was the subject of much discussion between Mr. Long and the Defendants' attorney between February 3 and February 7, and was to govern additional enumerated terms including, but not limited to: cattle grazing, personal property, tenants, and earnest money. *See* Docket No. 29, Exs. 4-9. In any event, it is undisputed that on February 7, 2014, Mr. Sapp's broker emailed Mr. Long at 10:00 a.m., stating, "[I]f we have not received a signed counter to our contracts, [Mr. Sapp] will withdraw his offer. We just don't feel [like] your client really wants to sale [sic] his property. . . . My client is leaving the county on Monday and will not return until the end of February." Docket No. 29, Ex. 9. Mr. Long notified Mr. Hall that the offer to

purchase the property would be withdrawn if a signed counteroffer was not received within two hours, and Mr. Hall did not submit a signed counteroffer. The next day, Mr. Sapp then notified Mr. Long that the offer would remain open all of that day (February 8) if Mr. Hall would sign it, which Mr. Long then conveyed to Mr. Hall. Mr. Hall notified Mr. Long that afternoon that he would not be signing a contract. The Halls never accepted any offer or signed any of these contracts, and the ranch remains in their possession to this day.

## ANALYSIS

Plaintiff Agri-Sales asserts in its motion that it is entitled to summary judgment because Agri-Sales possessed an exclusive right to sell the Defendants' property and produced a purchaser ready, willing, and able to purchase the property within the time frame set out by the contract. Defendants respond that: (i) Agri-Sales did not have an exclusive right to sell the Halls' property because of the reservation of rights contained in the contract itself, and (ii) the buyer produced was not ready, willing, and able to purchase the property. Defendants, in their cross motion for summary judgment, assert that they are therefore entitled to summary judgment because the Plaintiff did not possess an exclusive right to sell the entirety of the property, and the purported agreement contained terms not part of the "Exclusive Right to Sell Listing." The Plaintiff's response, consistent with its motion for summary judgment, asserts that it did not need an exclusive listing in order to recover a commission, and that the proper contract governing this issue is the "Exclusive Right to Sell Listing" and not the "Farm & Ranch Contract" signed by only Mr. Sapp. For the reasons set forth below, the Court finds there is no

evidence establishing a genuine dispute as to whether the Plaintiff produced a purchaser ready, willing, and able to purchase the Defendants' property within the time set out in the "Exclusive Right to Sell Listing," that Agri-Sales is entitled to summary judgment on its claim, and that the Defendants' motion for summary judgment should be denied. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute[.]").

An Enforceable Agreement. The Oklahoma Supreme Court has stated, "This court has repeatedly held that in cases such as this the broker's right to a commission or compensation is generally governed by the contract between the seller and the broker." *Williams v. Seminole Oil & Gas Co.*, 1935 OK 291, ¶ 10, 43 P.3d 59, 61. This requires the Court to construe the terms of the "Exclusive Right to Sell Listing." "The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made." *May v. Mid-Century Ins. Co.*, 2006 OK 100, ¶ 22, 151 P.3d 132, 140. "A contract must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context. . . . The court must interpret a contract so as to give effect to the intent of the parties at the time the contract was formed." *Mercury Inv. Co. v. F.W. Woolworth Co.*, 1985 OK 38, ¶ 9, 706 P.2d 523, 529, *citing* 15 Okla. Stat. §§ 152, 157. "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention

of the parties." 15 Okla. Stat. § 159. "The generally accepted rule, as stated in 17 C. J. S., Contracts, § 295, is that, where it is plainly to be inferred that the party could not have intended to use the words in the general sense which they impart . . . Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. No matter how broad or how general the terms of the contract may be it will extend only to those matters with reference to which the parties intended to contract." *Popplewell v. Jones*, 1949 OK 220, ¶ 9, 211 P.2d 283, 286.

The main dispute between the parties as to the "Exclusive Right to Sell Listing" is whether the Plaintiff had an "exclusive" right to sell the entirety of the ranch, in light of the Defendants' reservation of the right to sell two parcels. In this diversity case, *Oklahoma substantive law* applies. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938). Under Oklahoma law, "[b]y merely listing his property for sale with a real estate agent or broker, the owner thereof does not thereby agree that he will not compete with the agent in making a sale of the property himself and generally, he may sell it without the assistance of the broker and without becoming liable to him for a commission, unless the broker has procured a purchaser who is ready, willing and able to buy it." *Kennedy v. Hart*, 1940 OK 122, ¶ 8, 101 P.2d 808, 810, *citing Head-Berry Co. v. Bannister*, 1915 OK 1001, ¶ 4, 153 P. 669. *See also Roberts v. Markham*, 1910 OK 151, ¶ 2, 109 P. 127 ("The exclusive right to sell not being given, the owner may sell independent of the agent, and in such case he will not be liable to the agent for the commission, unless he sells to a purchaser procured by the agent."). But where the

-7-

exclusive right to sell *is granted*, the owner may not sell independent of the agent without becoming liable for the commission. *See Head-Berry*, 1915 OK 1001, ¶ 4, 153 P. 669 ("A real estate broker has neither an exclusive right nor agency to sell, even though he is employed for a definite term, unless he is granted one or the other in unequivocal terms; and in the absence of such grant, the owner may, independent of the broker, sell either through his own efforts or those of another."). Additionally, "[w]here the contract is in writing and provides that the seller will pay the broker a stipulated commission on a sale at a stipulated price when the sale is completed, the broker is not entitled to recover where the sale was not consummated in the absence of a showing that the failure of the purchaser to complete the transaction was caused by the fault of the seller." *Williams v. Seminole Oil & Gas Co.*, 1935 OK 291, 43 P.2d 59 (Syllabus).

Here, the Halls signed an "Exclusive Right to Sell Listing" with the Plaintiff, through Mr. Long, as to their approximately 1,346-acre-ranch. As part of this contract, the Halls reserved for themselves the right to sell two parcels of the ranch containing homes, without being liable for the commissions. Deposition testimony from Mr. Long reveals that he believed he had the exclusive right to sell the entire ranch with the exception of the two parcels. As to those two parcels, Mr. Long and Mr. Hall were in agreement that the Halls retained the right to sell the two parcels without being liable for the commission in the event the Halls (or one of their representatives) sold the two parcels. *See* Docket No. 29, Exs. 1-2. The Halls never objected, at any time during the negotiations, to Mr. Sapp's offer to purchase the *entirety* of the ranch, nor was the reservation of rights discussed as part of the negotiations with Mr. Sapp. Neither did the

Plaintiff object to the sale on the basis of the listing with Ms. Terry. Instead, the objection *now* is that the *title* of the "Exclusive Right to Sell Listing" does not reflect the actual terms of the contract, *i. e.*, that the contract was not actually an exclusive right to sell and thus there can be no breach of the contract because there was no exclusive right.

The rules of construction require the Court to give effect to the terms of the contract in such a way as to make it "lawful, operative, definite, reasonable and capable of being carried into effect." 15 Okla. Stat. § 159. An interpretation allowing the Plaintiff to sell the entirety of the ranch "give[s] effect to the intent of the parties at the time the contract was formed." *Mercury Inv. Co. v. F.W. Woolworth Co.*, 1985 OK 38, ¶ 9, 706 P.2d at 529. Even if the agreement were not exclusive, the Defendants would be liable for the commission where the broker procured an appropriate purchaser. *Markham*, 1910 OK 151, ¶ 2, 109 P. 127 ("The exclusive right to sell not being given, the owner may sell independent of the agent, and in such case he will not be liable to the agent for the commission, unless he sells to a purchaser procured by the agent."). The Court therefore finds (in agreement with the parties' own deposition testimony)[2] that the parties had an enforceable agreement, contained in the document titled "Exclusive Right to Sell Listing," which granted the Plaintiff the right to sell the entirety of the Defendant's ranch for a 5% commission, but allowed a reservation of rights for the

---

[2] "Q: Would the price have been the amount of the acres that you owned times [$]1995 an acre? Would that have been the sales price?
A: Yes. Yes. At that time."
Docket No. 30, Ex. 1, p. 2, Deposition of Roy Hall (in discussing the sale of the ranch, Mr. Hall agreed that the entire acreage of the ranch, including the two parcels, was part of the attempted sale).

Defendants to sell two parcels on the property without being required to pay a commission. In the event the Defendants did not exercise their reservation of rights, Plaintiff retained the right to sell the entirety of the ranch, and the right to earn the agreed-upon commission. "Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. No matter how broad or how general the terms of the contract may be it will extend only to those matters with reference to which the parties intended to contract." *Popplewell*, 1949 OK 220, ¶ 9, 211 P.2d at 286.

The Terms of the Agreement. Because the parties had an enforceable contract in the "Exclusive Right to Sell Listing," the Defendants did not exercise their right to sell the two parcels made part of the exception, and a sale has in fact never been consummated, the issue is thus whether the Plaintiff, as broker, actually procured a buyer "ready, willing and able" to purchase the Defendants' property according to the terms described in the "Exclusive Right to Sell Listing" between Plaintiff and Defendants, *i. e.*, no personal property made part of the sale unless agreed upon by both buyer and seller, and a cash price of $1,995.00 per acre, between August 15, 2013, and February 15, 2014. *See Jacobs v. Rothschild*, 1948 OK 31, ¶ 9, 197 P.2d 951, 952 ("There being no denial of the written contract granting plaintiffs' authority to sell the property, plaintiffs' right to recovery then rests entirely upon the question whether plaintiffs' evidence established that they had secured a purchaser who was ready, able and willing to buy upon the terms and conditions of the contract.").

As an initial matter, the Court finds there is no question (or suggestion by the parties otherwise) that the events at issue in this case took place within the timeframe of the contract which expired on February 15, 2014. The Court also finds that the terms of the Listing did not require the completion of a sale, but rather the *procurement* of "a purchaser during the term of this agreement ready, willing and able to purchase at the above prices and terms, or any other price or terms agreeable to Seller." Docket No. 22, Ex. 1. *See Rothschild*, 1948 OK 31, ¶ 15, 197 P.2d at 953 ("The contention fails to take into consideration the distinction between procuring one willing to be bound as a purchaser and procuring one who is bound."). *See also Hubbard v. Ryals*, 1940 OK 154 ¶ 5, 100 P.2d 843, 844 ("If he obtained a purchaser ready, willing and able to buy and the defendants refused to sell, it was not necessary that plaintiff furnish a written contract to the defendants from the purchaser."). Therefore, "[t]he question in an action to recover a realtor's commission is whether the realtor was the procuring cause of the sale. To meet this test the agent must have called the purchaser's attention to the property and started negotiations with the owner which culminated in a sale. But it is not essential that the real estate agent complete the negotiations, so long as he procured them." *Shelton v. Tapley*, 1958 OK 155, ¶ 5, 329 P.2d 672, 675. Even "[i]n the absence of special terms or conditions, a broker is entitled to his commission when he has procured a purchaser, ready, willing and able to purchase the property on terms agreeable to the seller, who is accepted by the seller, or *secured a purchaser who is bound by a valid contract of sale if accepted by the seller*." *Pfrimmer v. Tidwell*, 1950 OK 309, ¶ 1, 236 P.2d 978, 980

[emphasis added]*, citing Jacobs v. Rothschild*, 1948 OK 31, 197 P.2d 951. *See also Scott v. Kennedy*, 1931 OK 606, ¶ 0, 3 P.2d 907, 908 (Same) (Syllabus).

The Defendants nevertheless argue that Mr. Sapp was not ready, willing, and able to purchase the property because the initial offer was for less than the full price, and: (i) they never received a "fully executed contract with a signed Addendum A," (ii) Mr. Sapp never tendered any earnest money, and (iii) the notification that the offer would be withdrawn within two hours was arbitrary and capricious. None of these arguments are persuasive, and more importantly, neither do they establish a genuine issue of material fact.

Taking each argument in turn, the Court first finds, as stated above, that the terms of the Listing do not require "a fully executed contract with signed Addendum A" in order for the broker to recover the commission. *Hubbard v. Ryals*, 1940 OK 154 ¶ 5, 100 P.2d 843, 844 ("If he obtained a purchaser ready, willing and able to buy and the defendants refused to sell, it was not necessary that plaintiff furnish a written contract to the defendants from the purchaser."). The Listing merely requires that the "[b]roker procures a purchaser during the term of this agreement ready, willing and able to purchase at the above price and terms." Docket No. 22, Ex. 1. Defendants have pointed to no clause in the Listing, nor any case law, to support their argument that a fully executed contract was required. Furthermore, the Court points out that, to require the Plaintiff to produce a "fully executed contract with Addendum A," would have required that the Defendants themselves had signed the contract, in addition to Mr. Sapp. It is established by the undisputed facts that Mr. Sapp signed three separate versions of the

"Farm and Ranch Contract" dated February 1, February 3, and February 4 – any of which would have bound him to the purchase of the ranch if accepted by the Defendants, but Defendants never accepted any of Mr. Sapp's offers, including either of the two full price cash offers of February 3 and February 4. Essentially, the Defendants attempt to hide behind their own failure to act in order to avoid their obligations under the Listing.

The Defendants mainly challenge the Plaintiff's ability to recover the commission by raising numerous challenges to terms contained in the "Farm and Ranch Contract" signed by Mr. Sapp, as well as in Addendum A. The Defendants repeatedly note that the "Farm and Ranch Contract" contains many terms and references to Texas law, and assert it was therefore an insufficient contract with regard to the Halls' Oklahoma ranch. However, both the February 3 and February 4 versions of the Contract, *as well as each iteration of Addendum A*, explicitly stated that Oklahoma law would control. In the Farm and Ranch Contract, this is found under "11. Special Provisions," stated, "THE LAWS OF THE STATE OF OKLAHOMA WILL APPLY." *See* Docket No. 22, Exs. 5, 6. In every version of Addendum A submitted by the parties, beginning on February 1, 2014, it is found second on the list. *See* Docket No. 22, Ex. 3, p. 10; Ex. 7, p. 2, and Docket No. 29, Ex. 3, p. 10; Ex. 4, pp. 10, 25; Ex. 5, p. 13; Ex. 6, p. 2; Ex. 8, p. 11.

The Defendants also assert the "Farm and Ranch Contract" required Defendants to convey valuable personal property, *e. g.*, gamer feeders and livestock feeders used to run cattle operations, which was in conflict with the "Exclusive Right to Sell Listing" stating "no personal property is part of the sale unless agreed upon by buyer & seller." What

Defendants fail to acknowledge is that Addendum A, in versions prepared with participation from the Defendants' attorney on February 4 and February 5, states:

> 4. Seller and Buyer have agreed that: Seller will have up to 60 days after closing to move all of its personal property, including but not limited to, equipment, and vacate the main house and barns so that they are move-in ready for buyer. That Seller specifically excludes from the Contract the big Elk Horn Chandelier in the main house. Seller will have thirty (30) days after closing to remove all of his cattle and livestock from the property.

Docket No. 22, Ex. 7, pp. 2-3; Docket No. 38, Ex. 6, pp. 11-12. Furthermore, these versions both state, "12. If there is a conflict between this Addendum and the Contract, this Addendum shall control." *Id.* Even if the offer's terms were found to include the above-listed items in contention as personal property, the Defendants were free to agree to such an offer under the terms of the "Exclusive Right to Sell Listing," *and did not so object at the time of negotiations*. Indeed, there is no evidence to suggest that the Defendants rejected any of Mr. Sapp's offers on the basis of a disagreement regarding provisions related to personal property. *Cf. Parks v. Stewart*, 1953 OK 332 ¶ 6, 263 P.2d 750, 752 ("On the latter point the evidence is that defendant made no objection to the contract or any of the terms thereof; that he refused to execute a deed for the sole reason, as stated by him, that his wife objected to the sale and he would not sign a deed unless his wife also signed. He impliedly accepted the terms of payment and is therefore estopped from asserting as a defense that the contract did not comply with the terms of the listing agreement."). The Defendant may not raise objections he could have made, but did not, at the time of the negotiations.

Second, the fact that Defendants were not paid any earnest money prior to the execution of the contract has no bearing on the Defendants' obligation under the "Exclusive Right to Sell Listing," which contained no provisions for time or procedure regarding earnest money. *See* Docket No. 22, Ex. 1. Moreover, the Defendants' argument as to earnest money was in direct opposition to every iteration of the real estate contracts submitted as exhibits by both parties, which dictated that earnest money be paid "[u]pon execution of this contract by all parties," with additional earnest money to be paid fifteen days later. Docket No. 22, Ex. 3, p. 2; Ex. 5, p. 2; Ex. 6, p. 2; *and* Docket No. 29, Ex. 3, p. 2; Ex. 4, pps. 2, 15; Ex. 5, p 4; Ex. 7, p. 3; Ex. 8, p. 3. Additionally, versions of Addendum A on February 3, 4, and 5 had slightly varying versions of how to allocate and deliver the earnest money once it became nonrefundable, and the February 3 and February 4 versions varied in the amount of the purchase price that would be allocated to the value of the house such that the February 3 version stated $500,000 and the February 4 version stated $700,000. As discussed above, the Defendants refused to sign any of the offers submitted by Mr. Sapp. Because the Defendants never accepted any of Mr. Sapp's offers and never signed any of the contracts executed by Mr. Sapp, there was never a "fully executed contract" requiring the deposit of earnest money,[3] and the disposition of a nonrefundable amount of money as defined in Addendum A is not a specific term relevant to the "Exclusive Right to Sell Listing." *See Williams v. Seminole*

---

[3] Mr. Hall actually testified in his deposition that, "We didn't have a chance to do this; vet his buyer and find out who he is. Talk to his bank, figure out whether he's got enough money to buy the place his [sic] not. And that point, I was going to demand upfront, out-of-escrow deposit. In other words, a check written to me out of escrow before I signed the contract." Docket No. 30, Ex. 1, p. 5.

*Oil & Gas Co.*, 1935 OK 291, ¶ 10, 43 P.3d 59, 61 ("This court has repeatedly held that in cases such as this the broker's right to a commission or compensation is generally governed by the contract between the seller and the broker.").

Finally, the Court finds under the undisputed facts that Mr. Sapp's February 3 offer completely fulfilled all terms required under the Listing.[4] This offer was made within the time period of the Listing, was for the Halls' Ranch, did not implicate the reservation of rights clauses, and was not rejected on the basis of the provision regarding personal property. Had the Defendants accepted the offer made that day, it would have complied with the terms of the Listing and Mr. Sapp would have been bound by the terms of their contract. Furthermore, in an unchallenged affidavit submitted by the Plaintiff, Mr. Sapp stated that he was prepared to follow through on every offer he made on the ranch, that he had the capability to pay cash, and that he did indeed pay cash for a ranch he ultimately purchased. *See* Docket No. 22, Ex. 4. Therefore, the Plaintiff "*secured a purchaser who is bound by a valid contract of sale if accepted by the seller.*" *Pfrimmer*, 1950 OK 309, ¶ 6, 236 P.2d at 980 [emphasis added]. As such, any argument related to negotiations that took place after February 3, 2014, are not at issue in the question of whether the Plaintiff produced a buyer "ready, willing and able to purchase." *See* 28 A.L.R. 4th 1007 § 2 ("[A] real-estate broker is deemed to have earned his commission when he procures a buyer ready, willing, and able to take property on the terms under which it was listed by the owner – regardless of the success or failure of the ultimate sale

---

[4] The Defendants even admitted in their nonresponsive "Timeline" contained in their Response Brief that the February 3 offer purported to be a full price cash offer. Docket No. 29, p. 3.

contemplated by the parties when the property was first listed."). The Defendants nevertheless describe the deadline they were given on February 7 as arbitrary and capricious, then assert that it was Mr. Sapp's pressure to complete the sale quickly that derailed the sale, rather than their own refusal to sign the contract. But even when the offer acceptance deadline was extended to February 8 (and included every term the Defendant had demanded, contained in the Listing or no), the Defendants refused to agree to the sale of their property. "To decline to execute the contract without valid reason was arbitrary. And where grounds for refusal could have been given but were not given the same cannot be urged as a defense to the action for commissions." *Rothschild*, 1948 OK 31, ¶ 15, 197 P.2d at 953 [citations omitted].

Defendants argue that finding for the Plaintiff will place sellers at a disadvantage in the future by allowing purchasers to make an offer, withdraw it, and then leave sellers liable for a commission on an unconsummated contract. But those are not the facts of this case, and the law requiring that the purchaser be "ready, willing, and able" will protect buyers from just such a scenario. Ultimately, the Defendants here were not entitled to refuse to sign a contract then complain that the opposing party failed to comply with the unsigned contract's terms. "Where a real estate broker furnished a purchaser ready, willing, and able to buy upon the terms and conditions proposed by the seller, such agent has earned his commission, and his right thereto is not defeated by the fact that thereafter the seller refused to comply with the terms of the contract entered into between himself and the purchaser procured by said broker." *McKemie v. Cochran*, 1934

OK 715, ¶ 7, 38 P.2d 566, 568, *quoting G. B. Stone Realty Co. v. Schlingman*, 1932 OK 853, 17 P.2d 499 (Syllabus).

In summary, the Defendants are not entitled to judgment in their favor as a matter of law, and the Defendants Motion for Summary Judgment should therefore be denied. The Plaintiff is, however, entitled to judgment in its favor as a matter of law, and the Plaintiff's Motion for Summary Judgment should therefore granted. Furthermore, there is apparently no dispute as to the Plaintiff's damages herein; the contract between the parties indicates that the Plaintiff was entitled to receive a 5% commission on the sale of the 1,346-acre ranch at $1,995.00 per acre, or $134,263.00. The Plaintiff prayed for this amount in its complaint, and the Defendants do not contend some other amount would be appropriate on the facts of this case. Accordingly, the Court will contemporaneously herewith enter judgment in favor of the Plaintiff and against the Defendants in the amount of $134,263.00.

## CONCLUSION

In summary, Agri-Sales and Associates, Inc. is entitled to judgment in its favor as a matter of law on its Complaint. Accordingly, IT IS ORDERED that Plaintiff's Motion for Summary Judgment [Docket No. 22] is hereby GRANTED, and Defendants Motion for Summary Judgment [Docket No. 38] is hereby DENIED.

**DATED** this 11th day of September, 2015.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma